# EXHIBIT A

December 22, 2017

**VIA CM/ECF**

The Honorable Rodney Gilstrap
Sam B. Hall, Jr. Federal Building and United States Courthouse
100 East Houston Street
Marshall, TX  75670

Re:  ***Intellectual Ventures II LLC v. T-Mobile USA, Inc. et al.***
    **Case Nos. 2:17-cv-661, 2:17-cv-662**

Dear Judge Gilstrap:

Plaintiff Intellectual Ventures II LLC ("IV") and Defendants T-Mobile USA, Inc., T-Mobile US, Inc., Sprint Spectrum L.P., and Nextel Operations, Inc. (collectively, "Defendants") submit this joint letter under the Court's Standing Order Regarding Motions Under 35 U.S.C. § 101, regarding the T-Mobile and Sprint Defendants' Motion to Dismiss IV's counts related to U.S. Patent Nos. 8,682,357 (Count I); 8,897,828 (Count II); 9,320,018 (Count IV); 9,532,330 (Count V); and 9,681,446 (Count VI).

The Honorable Rodney Gilstrap<br>
December 22, 2017<br>
Page 3

## I.  IV's Position:  Claim Construction Is Necessary to Inform the Court's § 101 Analysis

"[A] definitive ruling on eligibility before claim construction is only warranted in narrow circumstances, making such a ruling the exception rather than the rule."  *Phoenix Licensing, LLC v. CenturyLink, Inc.*, 2015 WL 5786582, at *2 (E.D. Tex. Sept. 30, 2015).  A ruling on Defendants' Motion to Dismiss would be premature because numerous terms require construction.  Defendants implicitly adopt several claim constructions which are unsupported and incorrect.  Thus, Defendants' motion creates claim construction disputes that require resolution by this Court.  *Ultramercial, Inc. v. Hulu, LLC*, 722 F.3d 1335, 1339 (Fed. Cir. 2013) ("[When] there are factual disputes, claim construction should be required.").  It would be premature to decide the pending motions before the Court has construed certain terms of the patents-in-suit, including at least:

(1) "a signal to indicate a page … is derived from a [RNTI]" ('330 cl. 1, 9, 18, 26)
(2) "a [RNTI] associated with a plurality of UEs including the UE" ('357 cl. 11, 30, 47)
(3) "calculating transmit power … based on both the path loss and the accumulated TPC commands" ('828 c. 1, 15)
(4) "determining … a path loss of a downlink channel" ('828 cl. 1, 15)
(5) "receiving, on a single physical channel … an allocation of a scheduled uplink resource" ('828 cl. 1, 15, 29)
(6) "allocating resources"/"allocation of resources" ('018 cl. 12, 20, 24; '466 cl. 1, 4, 6, 9)
(7) "first parameter" ('018 cl. 12, 20, 24; '466 cl. 1, 4, 6, 9)
(8) "allocation message" ('018 cl. 12, 20, 24; '466 cl. 1, 4, 6, 9)

### A.  '357 & '330 Patents

The '357 and '330 patents are directed to innovative methods and systems for two-step processes to page handsets which enables the handset to conserve power and the network to conserve radio resources.  *See, e.g.*, '357 at 5:1-6:10.  Defendants argue the '330 patent broadly embodies the abstract idea of monitoring for, and then receiving a message.  Motion at 4.  In particular, Defendants assert that the various technical limitations should be ignored because they are "conventional."  *Id.* at 3 n.1, 8 n.5.  For example, Defendants argue that the claimed paging methods are "conventional" because "UEs can be identified in a message using the [IMSI or TMSI]."  *Id.* at 3 n.1 (citing '330 at 5:40-43).  This argument implicitly construes the term "a signal to indicate a page … is derived from a radio network temporary identifier (RNTI)" to involve nothing more than identifying a handset through its IMSI or TMSI.  *Id.* at 8 n.5.  This construction is incorrect and contradicted by the '330 patent itself.  *See* '330 at 5:34-46, cl. 29.  IV contends, and the intrinsic record demonstrates, that the claimed "signal to indicate a page…derived from a radio network temporary identifier (RNTI)" is not the same as the IMSI or TMSI of a handset.  *Compare* cl. 29 *with* cl. 26.

A proper reading of the '330 patent demonstrates that the "monitoring" step does not encompass continuously monitoring for any signal, as Defendants argue.  Motion at 7.  Instead, the claimed "monitoring" at particular paging occasions allows handsets to drastically minimize power consumption and prevents the network from inefficiently expended resources.  IV contends that the terms should be given their plain and ordinary meaning as they would be

understood by a POSITA, e.g. a network operator, not a pilot. *See Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1337 (Fed. Cir. 2016) ("describing the claims at such a high level of abstraction and untethered from the language of the claims all but ensures that the exceptions to § 101 swallow the rule").

### B.   '018 & '466 Patents

Defendants' motion cannot be granted without construing "allocating resources." Defendants have implicitly construed this term to mean "ordering allocation of resources," to manufacture an abstract idea that does not exist. Motion at 13, 18. However, "ordering" is not part of any of the asserted claims. Moreover, the '018 and '466 patents do not disclose "ordering" an allocation. *Compare, e.g.*, '018 at Fig. 6 step 625 (ordering queues) *with* step 665 (allocating resources). Similarly, the cornerstone of Defendants' argument that there is no inventive concept relies on Defendants' assertion that the terms "[first] parameter" and "allocation message" are "without any meaningful limits." Motion at 17. Even if these terms were only given their plain and ordinary meanings, they would still contribute to an inventive concept, e.g., using both multiple parameters and an uplink resource allocation in allocating uplink resources. Defendants' construction writes these terms out of the claims to instead focus on a straw man: that a mathematical allocation algorithm cannot be an inventive concept. *Id.* at 18-19; *see also id.* at 14-16. In fact, the claims do not specify any particular algorithm.

### C.   '828 Patent

The '828 patent describes a dynamic method for controlling power levels using transmit power control ("TPC") commands and/or measurements of "path loss" in order to reduce error rates and interference, as well as conserve power. '828 at 7:64-8:3. Yet Defendants' motion reduces the claimed invention to "the concept of selecting between two algorithms." Motion at 24. Defendants improperly construe "determining … a path loss of a downlink channel" to refer to a static process. *Id.* at 28. However, the intrinsic evidence indicates that a POSITA would understand it to be a determination that changes over time. '828 at 4:60-5:3, 5:40-46, 7:46-8:12.

Defendants rely on an overbroad construction of the term "calculating transmit power … based on both the path loss and the accumulated TPC commands." Defendants incorrectly construe "path loss" as synonymous with "open loop power control," and "TPC command" as synonymous with "closed loop power control." Motion at 21. However, as described in the '828 patent, "path loss" is a specific measurement that may be used in one particular type of "open loop power control." '828 at 2:11-14. Defendants also misconstrue "receiving, on a single physical channel … an allocation of a scheduled uplink resource" where they argue that this claimed limitation is "conventional." Motion at 27-28, n.20. The issued claims in the '828 patent are patentably distinct from the claims considered in the cited PTAB Decision, and Defendants fail to account for this difference in claim scope, which belies an improper construction of claim 15. *Id.*

## II. Defendants' Position: Claim Construction Will Not Alter the Court's § 101 Analysis.

Before the parties met and conferred, Defendants informed IV of the patents and claims that they would be challenging under § 101. During that meet and confer, Defendants focused on specific representative claims from each of the challenged patents. Defendants asked IV to identify any claim terms whose construction could alter the Court's § 101 analysis, and IV identified none. IV now identifies eight terms that allegedly require construction. IV, however, does not provide *any concrete constructions* for those terms or explain *why* a construction would alter the Court's § 101 analysis. *Network Architecture Innovations, LLC v. CC Network Inc.*, No. 2:16-cv-00914-JRG, 2017 WL 1398276, at *4 (E.D. Tex. Apr. 18, 2017) (holding that construction was not necessary to resolve defendant's 12(b)(6) motion where patentee failed to explain why construction would alter the court's analysis). Because no claim construction issues affect the patent ineligibility of the challenged patents, the Court can decide Defendants' 12(b)(6) motion to dismiss without first conducting claim construction.

### A. '357 and '330 Patents

Representative Claim 26 recites a two-step method reciting a "monitoring" step and a "receiving" step. IV's argument regarding the "receiving" step—that an IMSI and TMSI are not the same thing as a "signal to indicate a page . . . derived from a radio network temporary identifier (RNTI)"—does not affect the § 101 analysis.[1] Defendants' motion does not depend on an argument that an IMSI and a TMSI are the same as a "signal to indicate a page . . . derived from a radio network temporary identifier (RNTI)." Rather, Defendants' motion establishes that the concepts embodied in those terms are conventional and merely limit the claim to a particular technological environment. Dkt. 20 at 2-4, 7-11. And, in any event, IV does not propose a construction for any terms in the "receiving" step and IV fails to explain how any construction would alter the Court's § 101 analysis. *See CyberFone Sys., LLC v. CNN Interactive Grp., Inc.*, 558 F. Appx. 988, 991 n.1 (Fed. Cir. 2014) ("[Patentee] argues that claim construction must precede the § 101 analysis, but does not explain . . . how the analysis would change.").

IV's other argument—that the "monitoring" step is performed at "particular paging occasions" and not "continuously"—is unsupported attorney argument. If IV is suggesting construction of the "monitoring" step (IV did not identify the step on its list of terms), IV fails to cite to any intrinsic evidence or explain why such a construction would alter the Court's analysis. IV's argument also mischaracterizes Defendants' motion. Even if the "monitoring" of Claim 26 is done at "particular paging occasions" and not done "continuously," the step would still be a results-based limitation that is analogous to other claims involving "monitoring" steps that courts have invalidated. Dkt. 20 at 4-6.

---

[1] IV identifies the term "radio network temporary identity (RNTI)" from the '357 Patent, but offers no argument or analysis for this term separate from the two terms identified above.

### B.     '018 and '466 Patents

Representative Claim 6 of the '466 Patent is a two-step method claim involving a "receiving" step and an "allocating" step. IV identifies three terms from Claim 6 allegedly needing construction: "allocating resources," "parameter," and "allocation message." Construction of those terms, however, would not impact Defendants' motion.

IV argues that "allocating resources" requires construction, but IV does not provide a construction of that term, cite to any intrinsic support for such a construction, or explain why a construction would alter the Court's analysis. IV's only argument with respect to this term is that "ordering allocation of resources" is not part of the claim. Setting aside that IV fails to address the portion of the claim reciting "wherein resources are allocated for data of each channel having a second parameter above zero prior to another channel's data for transmission having a third parameter less than or equal to zero," IV's argument does not affect this motion. Even if the Court accepted that "ordering allocation of resources" is not part of the claim, removing that concept only renders the claim more abstract, further supporting this motion.

IV's arguments for "parameter" and "allocation message" rest on applying an undefined plain and ordinary meaning to those generic terms. IV argues without explanation that the "plain and ordinary meaning" of those terms would "provide 'meaningful limits'" on the claim and contribute to an inventive concept. However, Defendants' motion explains how those terms are generically recited such that they do not meaningfully limit the claim, *see, e.g.*, Dkt. 20 at 17-18, and IV makes no effort to identify any particular meaning that could alter the analysis.

### C.     '828 Patent

IV's suggests that "determining . . . a path loss" is a "dynamic" process, but does not provide any concrete construction of that term or explain why such a construction would alter the Court's analysis. In any event, Defendants' motion does not hinge on whether the "determining" step is a dynamic or static process. The claims would still be patent ineligible even if they required dynamically "determining . . . a path loss" as such a dynamic process does not make the claim any less abstract or add an inventive concept. The claim would still be analogous to the claim held ineligible in *Parker* involving a "determining" step performed as part of a feedback loop where an "updated" alarm limit was repeatedly determined. Dkt. 20 at 22-23.

IV's arguments for "calculating transmit power . . . based on both the path loss and the accumulated TPC commands" fail for the same reasons. As Defendants' motion explains, the '828 Patent's "Description of Prior Art" section confirms the conventional nature of using path loss as part of the open loop scheme and TPC commands as part of the closed loop scheme. *Id.* at 21. Contrary to IV's brief, the motion does not contend that any of those terms are synonymous. Like the terms above, IV fails to provide any construction, cite to any intrinsic support, or explain why a construction is necessary for "receiving, on a single physical channel . . . an allocation of a scheduled uplink resource." IV's only argument is that the issued '828 Patent claims are "patentably distinct" from the claims rejected at the PTAB. That argument is irrelevant to whether construction would alter the Court's analysis.